Robert D. Johnston, Sole Surviving Partner of Risk & Johnston, Plaintiff, v. Compagnie Generale Transatlantique, Defendant.

Supreme Court, New York Special Term, July 11, 1924.

Judgments — res adjudicata — motion by plaintiff, assignee of bills of lading, for judgment on pleadings in action to recover value of merchandise delivered to defendant for shipment — judgment entered against plaintiff in French court on same bills does not constitute bar to motion — validity, construction and obligations of bills of lading determinable by laws of place where instruments were drawn — judgment limited to value of merchandise designated in bills of lading — principle of comity inapplicable.

Motion by plaintiff, assignee of bills of lading, for judgment on the pleadings in an action for the value of merchandise delivered to the defendant for shipment should be granted, in the amount designated in the bills of lading, though the defendant interposed the defense of res adjudicata as to a judgment entered against the plaintiff on the same bills of lading, in a French court, since the judgment is not a bar to the present action where the bills were made in this country and their validity, construction and obligations are determinable by the laws of the place where they were drawn. Moreover, the patent breach of delivery forces a decision that recognition should not be given to the decision of the French court, as comity otherwise might compel.

Motion for judgment on the pleadings.

Harry Dubinsky (Moses Feltenstein, of counsel), for the plaintiff.

Joseph P. Nolan, for the defendant.

Wagner, J. The plaintiff has instituted an action against the defendant, a steamship corporation organized and existing under the laws of the Republic of France, to recover the value of fifty cases of merchandise delivered to the defendant by one Frank Webb, to whom the defendant delivered a triplicate original bill of lading and a fourth copy stamped by the defendant "non-negotiable." The three original bills were delivered by Webb to the plaintiff against advances made him by plaintiff. They were indorsed in blank, the merchandise deliverable to order or to his or their assigns "Notify Haillot-Delcourt & Company, Paris, France, also Henry Johnson Sons & Co., Ltd. * * * Paris, France." The non-negotiable bill of lading was also indorsed, for what reason it is unapparent, and upon it the goods were delivered to Haillot-Delcourt and Henry Johnson & Sons, non-consignees. Their value, limited by a provision of the bill of lading, is herein sought. It is conceded by the admission in evidence of the judgment roll that the plaintiff sued the defendant in the 8th Chamber of the Tribunal of Commerce of the Department

of the Seine, sitting in Paris in the Republic of France, and that thereafter judgment in said action was entered against the plaintiff. The defendant pleads this judgment as *res adjudicata* and as constituting a bar against the maintenance of the within action. It is upon the effect of such judgment that the disposition of the case hinges, and the French law, as well as our own decisions and opinions of experts therein, have been examined with the care that the importance, though non-novelty, of the question presents. Though instances and exceptions may be found in the jurisprudence of that country, peculiar to us by reason of its unsymmetric structure where recognition has been afforded to judgments of this country, the great bulk and trend of their authority and leaning and disposition of application in their decisions emphasize the absence of comity on their part in observance as binding of the adjudications of this country, which want of reciprocity on similar grounds, set forth at length by our Supreme Court in *Hilton* v. *Guyot,* 159 U. S. 113, 215, in an opinion as comprehensive as it is discriminating, deprives the judgment of their courts of finality here. Fraud or prejudice may be a true motive for declining observance. In addition, principles of international law and comity may deprive them of full, not *prima facie,* credit and effect. The doctrine of revision *au fond* exercised there has been so stated, " by the law of France, settled by a series of uniform decisions of the Court of Cassation, the highest judicial tribunal, for more than half a century, no foreign judgment can be rendered executory in France without a review of the judgment *au fond* — to the bottom, including the whole merits of the cause of action on which the judgment rests. (Pardessus, Droit Commercial, § 1488; Bard Précis de Droit International, (1883) Nos. 234–239; Story's Conflict of Laws, §§ 615–617; Piggott, 452; Westlake on Private International Law (3d ed. 1890), 350)." Sirey extends it without limit to the form and to the merits, 1892, 1201. " In other words, whether judgment of exequatur should be given is a matter of discretion in which the highest regard is paid to the rights and interests of its subjects." Its right of intervention would appear uncramped and control full and absolute as to any matter so founded and so submitted before it. Reservations, it is true, there are, as exceptions always serve to reinforce the tenor of the rule. Additional burdens may not be cast. Reduction is perhaps prohibited as restrictions upon the introduction of new matter. The principle, however, remains that the minutest inspection is made with eye singly to discovery of commands or inhibitions contrary to principles of French law or applications based on foundations of injustice as appearing to

them. Reversing the situation, the course of conduct is, I think, plainly marked. Does the logic and reason of the judgment commend itself to enforcement by recognition here? The contract was made here. The validity, construction and obligations of it are determinable by the laws of the place where the original bill of lading was drawn. The law of the place where the completion was to be made is ineffectual as determinative. Its construction, as made by the French court, is obviously incorrect. By principles of law, assuming a state of conflict, its interpretation was compulsorily dependent upon our law. The stamp " non-negotiable " deprived it of any validity as a transfer of title. The obligation was alike fixed here. Delivery could only be properly made to order or assigns. The intent of the parties, loosely and inaccurately referred to by the courts as to other aspects of conflicting rules of law, here stands on solid ground and must be respected. Delivery to definite consignees was stipulated. Delivery to no other can be claimed as performance. Physical matters as to the law or customs either as to time and place are of no concern; they are governed by the law where the performance was to take place. The question here is one of obligation, not performance, and the breach was of the former and must be so dealt with. Other grounds have been raised, including that of the peculiar constitution of the French court to deny its judgment authority. Its composition of law merchants has already been discussed by the courts of this state. In my mind it has no bearing on the matter. Our sense of justice and repugnance against the patent breach of delivery here disclosed, as to which inquiry is allowed by the doctrine of revision which the French courts in transverse situations apply, forces the decision that recognition should not be given the judgment pleaded in the answer and that it constitutes no bar to this proceeding, as comity otherwise might compel. The limitation of liability in the provisions of the bill of lading control the amount of the judgment. Judgment, therefore, is ordered in favor of the plaintiff and against the defendant in the sum of $5,000, with interest from December 31, 1914.